We're ready to hear the argument in our last case of the morning, Sowash v. Marshalls. Mr. Grimes, whenever you're ready. Yes, thank you. May it please the Court, good morning. And yes, Terry Grimes here for Plaintiff Appellant Summer Sowash in this appeal. Very good to be here. I appreciate the opportunity for oral argument in this case. This case comes to you on summary judgment from the Western District of Virginia. The primary issue in this appeal is whether a jury could find that the harassment in question was objectively severe pervasive, that being one-half of the third element of a hostile work environment claim. The answer to that question is unequivocally yes. Let's just dive in and start with the cumulative impact of repeated touching, which is one of the totality of the circumstances factors under Harris v. Texas forklift systems. When you and I come to work, we try to work on our cases. You may write opinions, I try cases, whatever. But when the Summer Sowashes of the world come to work, they ask, is he going to touch me again today? That colors every aspect of their working world. Each touch is worse than the one before, and that's what happened in this case. The cumulative impact of this touching was debilitating to her, and I submit to you that any reasonable woman could have felt exactly the same way. It's not so much about sexual desire in this case, but it's about power and control and the need to dominate subordinate women in the workplace, and a jury could easily so find. Just look at it another way. There's not a woman inside this courtroom from the bench to the law clerk to the courtroom deputies to the women in the audience, virtual and real, who would tolerate for one minute some man coming up to them at work, holding them close with one arm to his body and running his finger up and down their other arm every day for up to a minute at a time for several months. Very few women would tolerate that. Counsel, can I ask you, does your argument on pervasiveness, and I guess severity too, does it turn on this happening every day or near daily? Because I understood the district court to find something more like between 10 and 20 times over a period of three months. Does that matter to your argument? Frequency matters. So is it important to your argument that it was what you said every day? I didn't say every day. Oh, I'm sorry, I thought you did. Continuous almost every day. Okay, is it important that the almost every day part is important to your argument? I don't know that almost every day. It's not a mathematically precise test. What the plaintiff said had happened more than 10 times, and whether that was metaphorical or literal, the fact is that more than 10, the numbers run from 11 to infinity. So the most that we can say from the evidence is that somewhere between 11 and infinity, and it was continuous nearly every day between 15. But I thought she couldn't remember whether it was more than 20. She said she couldn't remember, yes, in the deposition. So doesn't that rule out infinity, no? Well, you know, it probably rules out infinity, Your Honor, but more than 10 is certainly somewhere between more than 11. Now, whether it's 11 or 20 or 30 or 40, it's not a mathematical procedure. I'm sorry, but if she can't remember, I really don't. This was a genuine question about how much emphasis you want us to put on sort of the near daily part, because if she can't remember if it happened more than 20 times, it's not obvious to me that a reasonable jury could find that it did happen more than 20 times. I disagree because what she said is continuous nearly every day. In depositions, that's what happened. The defense, was it 100, was it 75, was it 37, was it 42? But mathematical precision is not the test. The test is the impact on her and a reasonable woman. I have a different question. So she also testified at her deposition that the unwanted touching stopped in June 2018 after she spoke with Joe Taylor, but that the remarks and bullying got worse. What specifically does appellant contend Hughes said to her after June 2018? He kept saying things to her like, oops, don't report me again, oops, did you report me again, and things of that nature. Where is that in the record then after June 2018? I can't specifically point after June of 2018, but that's what she said, the bullying got worse. So that's the bullying, don't report me again? There's more to it than that. Yes, there's more to it than that. He would comment on her clothing, make compliments, but these were not compliments. These were not genuine compliments. This is what he was saying. He was saying, look, I'm still here. I know that you reported me to management over and over. I'm not going anywhere. Marshalls is not going to do anything. Are you saying he actually said that or that's how appellant perceived what he was doing when he complimented her? That's how she perceived it. And that's how it was viewed by Lynn Terrell as well. She says specifically in her declaration, these were not compliments. This was him exercising his power and control over her, telling her, I'm not here. I'm not going anywhere. I know Marshalls is not going to do anything. And that's after she complained to six levels of management. But that really goes more to the fourth element, I think, to the third element, which is not at issue in this appeal. But the point is with respect to the objectively severe pervasive, there are not many women who would tolerate this sort of touching for months on end, whether it's 10 or 20 or 30 or whatever it is, for months on end, nor should they have to just to work and earn a living. They should not be faced with this Hobson's choice. She was asked, why didn't you smack him or something? And she said, I need my job. I need to work and make a living. But when she was, you remember when she complained, she was told, quote, that was too bad. You're going to have to be scheduled to work with him, David Hughes. That's what she was told. A jury may find that any reasonable woman would find that offensive. As I've said on brief, and simply put, women are not property. They have a right to work. They have a right to be left alone. They're not to be touched and prodded like cattle at the women, whoever they're working with. They have a right to be treated with dignity and respect. And that'd be true if there's not a single case on point, but I've cited to you Zetwick v. City of Yolo, very similar to this case, King v. McMillan, the Beardsley case, and so forth. And you have to bear in mind that this process, the depositions, for example, were brutal. They were brutal to the point they had to be adjourned so the plaintiff could throw up. And marshals at one time asked plaintiff's mother, is it true that Ms. Sowash was raped once and only once? This process is brutal for women who have to go through this. Counsel, can I ask you a question? So we're reviewing this district court decision, and the district court in applying the severe and pervasive standard thought that what the record, you know, the facts that could be sort of had been established on this record, the facts that he would consider, that the district court would consider, were the one-armed hugs and touching of the arm at least ten times, the welcome back hug and kiss on the cheek, and then the compliment about looking good in yellow. Is it your position that there ought to, there were other facts that ought to have been considered, or is it your position that on those facts, the district court came to the wrong legal conclusion, or maybe both? Both. Because there were, on the Ziske versus Mineta, the court can center other harassment in the workplace, the chasing the young woman down. But only if the plaintiff knows about it, right? Yes, there's some case law that says only if the plaintiff knows about it, but she certainly knew about the references to the, I forget the name of that movie, the Shades of Grey movie. And where is that in the record, that they were aware, that the plaintiff was aware of that? Okay, I can't point that to you as I look here. Okay, but you believe, but you do believe that there are other facts where the record will show the plaintiff was aware of them? Well, certainly she was aware of what was going on with Christy Thomason. Remember, those are the two women that David Hughes reserved his very worst for. Summer Sowash and Christy Thomason. Remember, that's how all this got started. Back in February of 2018, she was in a meeting with David Hughes and said, look, I hear this is going on about Christy Thomason. If you don't tell me the truth, you and I are going to utter some profanity to her. And that's when all the touching started. That's when the touching started. So from the very beginning, it was about power and control and domination over her. And throughout that time, as I've said, he would say things like, oops, don't report me again, as if it were all a joke. And she described a question, how did he sexually harass you? Answer, he would touch me, he would hug me, he'd kiss me. All the comments that he's made about my appearance, and it was continuous almost every day. And I submit to you very simply that there's no question that the harassment was subjectively severe pervasive. There's no question about that. The court made that finding or assumption. It reduced her to tears in the workplace to the point she reported it through six levels of management. And we simply submit to you that the jury could find that a reasonable woman would have felt the same way. There are three other issues in the appeal. I may run out of time on them, but I do want to address them quickly with the time that I have. And that is the first, the Virginia State common law claim for assault and battery. Assembly for reasons stated, the jury could find that the harassment was objectively severe pervasive, assuming for sake of argument that there is an objective versus subjective dichotomy under Virginia common law, which we take issue with. The only case cited by the court on brief below was this Ballas versus Huntington Ingalls Industries. And that's distinguishable. That case involved a gift of a plate of Christmas cookies to a man and a hug by him. That's all that case involved. That's nothing like the facts of the case at bar. The defense raises the because of sex argument. That's a red herring. I can dispose of that argument in one sentence. It's simply undisputed that Hughes treated Sowash and other women like Christy Thomason categorically different from the way he treated men at work. Marshalls concedes on brief that there's no reason why a homosexual man could not sexually harass a woman at work. And then finally we have the Lynn Tyrell affidavit, another red herring. First, Marshalls never moved to strike that affidavit below, which they should have done. Therefore, this court should not entertain the question on appeal and an appellate. Next, Rule 56 not only permits the filing of affidavits, it requires them to the court consider all the evidence before it on summary judgment. Rule 47 says that has to be filed at least one day before the hearing, which it was in this case.  Tyrell's a manager. She reported what she saw and heard. She's charged with reporting sex harassment up the chain. That's exactly what she did. And as stated on brief, it would have been reversible error for the district court to fail to consider the affidavit anyway. So that's just a red herring. So in conclusion, we ask this court to reverse the judgment of the district court and remand this case for trial. This case has nothing to do with the line of cases that concern accidental touching in an elevator or some such. That's not actionable. But here we have purposeful touching for the purpose of exercising power and control over a woman. That's what he did for many months. So thank you very much. I'll stand down. All right, thank you, Mr. Grimes. Mr. Baldwin, we'll hear from you. Thank you, Your Honor. Ray Baldwin on behalf of David Hughes and Marshall. May it please the court. Welcome back hug and a peck on the cheek is not sexual harassment and it's not assault nor is it battery. Ms. Soash's written statement of the welcome back hug confirms this point. She says that after she came back from a medical procedure, Mr. Hughes hugged her and kissed her on the cheek and welcomed her back. Her coworker, Vivian Menendez, the same thing in her statement. She says that Mr. Hughes hugged her and gave her, quote, the appearance of a peck, close quote, and welcomed her back and indicated he was glad she was doing better. This conduct does not meet the high standard required to demonstrate severe or pervasive harassment. In determining whether harassment is, in fact, severe or pervasive, as the court knows. What about, I wonder if I could ask you to address sort of what your colleague was mostly talking about today. Not the welcome back hug and kiss, but the continuous, you know, the one-armed hugs and the touching of the arm. Absolutely, Your Honor. This assertion that Mr. Hughes gave her one-armed hugs on more than ten occasions is unsupported by any evidence in the record. This type of conclusory unsupported assertion has been rejected by this court in the case EEOC versus Xerces. But the district court essentially looked at the evidence, said that was consistent, and said that wasn't severe and pervasive. So is your argument that it was really less than that, and therefore it's less severe and less pervasive? I mean, it sounds like you're questioning what the district court found, which you're certainly entitled to do. I think, Your Honor, that the district court. Let me just add, we're at summary judgment, as you know. You consider the evidence in light most favorable to the non-moving party. So probably hard to say the district court abused that standard by talking about it. Maybe it did. But I'm certainly open to hearing what you have to say. But I think, Your Honor, the district court did an excellent job of looking at the evidence, separating the hyperbole, and accepting what was, to use your words, in the light most favorable to the plaintiff and settled on more than ten. Our case, Your Honor, our argument is, accepting that standard, that number, it's not severe or pervasive. But if the court were inclined to go down the road of continuous and every day, our position is it absolutely should not do that, because the type of conclusory support has been rejected in Xerxes, in Evans v. Technologies Applications, Causi-Bellog, and Carter v. Ball. Here, there's no evidence that anybody else saw this alleged every day hugging. There's no evidence that she reported every day hugging to her fiancé. In fact, her fiancé testified that he only knew about the welcome back hug and peck on the cheek. The evidence is she had a fabulous relationship with her mother, whom she saw every day and never told her about alleged every day touching. She submitted a written statement on May 10th, 16 days after the April 24th welcome back hug, no mention of continuous touching. She met with Erica Garrett, who came into Roanoke to do a pulse check on May 1st and 2nd. She didn't even tell Miss Garrett about the welcome back hug and a kiss, much less continuous every day touching. Finally, she meets with Joe Taylor in June and tells him only about the welcome back hug and a kiss on the cheek. I offer the court those factual pieces from the record to demonstrate why the holdings in cases like Xerxes are sound and that the court should not consider the type of conclusory it happened every day statement here devoid of any record. But assuming, as the district court did, 10 times or more, maybe even let's call it for present purposes only, maybe some number between 10 and 20 based on her deposition testimony. It was more than 10 times. I don't remember if it was more than 20. Can you just explain to me why that is not sufficiently pervasive to rise to the level of a hostile workplace environment? Yes. There's no question that if Mr. Hughes touched Miss Solosh 10 times or 20 times and she didn't want him to touch her, now, mind you, the evidence is she never told him not to. But she reported it, right, several times? Well, there's a dispute about that. What's a dispute? Are you saying she did not report it to several supervisors? For purposes of summary judgment, obviously the court can assume that she did, but there is no record evidence of that. But if I could, Your Honor, let me try and address your question. There's no sexual comments that occurred with respect to any of the touching. In fact, there's no comments at all. There's no evidence that it caused her not to be able to perform her job, to have to take leave, to take any time off. There's simply not the high level of harm that this court's jurisprudence has historically required in order to demonstrate the high threshold necessary for severe and pervasive harassment. The Hopkins v. Baltimore case, the Hartzell v. Duplux case, the Singleton case. There's an excellent case I'd refer the court to from Judge Brinkman out of the Eastern District. That's Freeman v. SAIC. This was a female-on-male situation, and the allegations were that the female supervisor stared at the man's groin, put her hand on his shoulder and side, grabbed his arms and commented on his biceps, playfully touched his lower back, rubbed his earlobe, told him his beard looked good, and allegedly touched him inappropriately two to three times a day. Judge Brinkman found that that conduct, based on Fourth Circuit precedent, was not severe or pervasive. And I think, Your Honor, Judge Urbanski, as I said, he separated the wheat from the chaff and he landed on the nugget. What he said was, while he uses hugs, touching, if so, washes his arm, kiss on the cheek, and occasional compliments about her appearance are inappropriate workplace behaviors, they do not cross the threshold of severe or pervasive conduct under Title VII. Moving to the because of sex prong, whether this prong is met depends upon the nature of the conduct involved and the context of the behavior. There are at least three ways a plaintiff can demonstrate this. One is earnest solicitation. Counsel, I want to hear what you're saying here. When you say there's three ways, is that based on Fourth Circuit law or are you looking at that English District Court case? One of the things that I wasn't entirely clear of is whether we have established factors. So are you saying that's established law or is that saying what you think the three ways that can be done? It is established law, but I want to be clear. The Oncoli case was the first case to set forth these factors. This court in Lack v. Walmart highlighted them. And then more recently in Roberts v. Glenn Industrial, this court clarified that and said these aren't the only three, there may be others. So that's why I said there are at least three. And I agree on very little with Mr. Grimes except that in sexual harassment cases you have to consider the totality of circumstances. And the law is not a rigid model in order to determine whether sexual harassment has occurred. The facts are so varied and so different, it simply cannot be. But so here, there's no evidence of any solicitation, none. No asking out on a date, no private parts, no gropes, no sexual comments, nothing. And the undisputed evidence is that Mr. Hughes is gay. He's lived with the same man. What does that matter? It's not about because of his sex or his sexual activity. It's because of the plaintiff's sex and whether he treats men and women differently. I couldn't agree more, Your Honor. The key inquiry here is whether members of one sex are treated to disadvantageous terms and conditions of employment than another. But the reason his sexual orientation matters is because it removes the first vehicle which is commonly used to prove because of sex. And in the majority of sexual harassment cases where a man is behaving inappropriately towards a woman, there is often sexual interest that can be demonstrated to show that that's why he's behaving that way. My point is simply here. So is your comment that that's not relevant to this, that shows there's not a solicitation-type way to get to because of sex or it's relevant beyond that? No, it's relevant because it shows that Mr. Hughes was not interested in Ms. Soash romantically or sexually. Therefore, on the because of sex prong, Ms. Soash cannot avail herself of the earnest solicitation. But that's not the only way you can have sexual- That is correct. Because of sex condom. If Ms. Soash could demonstrate a general hostility towards women in the workplace or if she could offer direct comparative evidence that shows men and women were treated differently, I submit to the court she doesn't do either of those two things. With respect to general hostility towards women, she relies on a comment that Mr. Hughes made to Erica Garrett as part of the investigation. The comment was that the store manager was going to get upset because cute little girls were bringing their boyfriends into the store. There's no evidence in this record that that comment was made to Erica. It seemed to me that there was at least possibly some evidence suggesting that this was a problem specific to women in the workplace between Mr. Hughes and women. But I'm not sure if we thought that we reached this question, the because of sex question, the district court didn't reach it, right? No one has ever looked at the record through this lens. Wouldn't we normally just remand and have the district court address this in the first instance if we thought it were dispositive? Or are you suggesting we should resolve it ourselves in the first instance? You certainly don't need to resolve it, Your Honor, to resolve the case. The case can be resolved solely on severe or pervasive. The district court did not consider the because of sex prong. Right, so no one has looked at the record sort of with, no one has made this inquiry of this record. Is there enough here to get to a jury on whether this behavior was targeted at women? I don't think there is, Your Honor. I know you don't think there is, but I'm sorry, I meant no court has looked at, right, okay. That is correct. No court has adjudicated whether on these facts there was a jury question created, presumably if Judge Urbanski thought that the issue was such that it warranted further consideration. And from a kind of, I guess, logic or following an analytical or structural basis, that really would come first before severe and pervasive. Because it first has to be because of sex. And then if you discriminate because of sex, and you don't show an adverse employment situation, you can still do it based on a hostile work environment. And so it's the district court's severe and pervasive conclusion, I don't know if he assumes expressly because of sex, but that's almost, it seems like what has happened. And then he goes, even assuming that, even though he probably doesn't use those words, it's not severe and pervasive. Is that right, kind of how that analysis would flow, or do you disagree with that? I don't, Your Honor. I think from a logical perspective, one would typically look at the because of sex factor first and then move on to the severe or pervasive factor. But I'm not aware of any law which requires that sequential analysis, nor any case which faulted a lower court for not analyzing because of sex first. And obviously I would be entirely speculating to opine on why Judge Urbanski ruled in this fashion. But I want to try and focus in on this idea about whether there's evidence in the record, that Mr. Hughes treated women worse than men. The evidence in the record is that he winked at at least two men. And the evidence in the record is that two women, only two, said that he had touched them. One was Ms. Soak and one was Christy Thompson, who characterized a touch on the shoulder as him trying to be friendly for your girlfriend. She said that it did not have sexual connotations. She didn't like it because she has a medical condition that made it painful. So this is not a case, despite the hyperbole in which Mr. Hughes, at least according to the evidence, has engaged in wholesale abusive behavior towards women. With respect to the Turrell Declaration, it's chock full of hearsay. But more importantly, it was drafted in October 2020 and signed. Discovery didn't close until March 2021. It was never produced. It was never produced. And it should have been, and there's never been an explanation why. Beyond that, it doesn't offer any context. It is rife with opinion and it doesn't provide the sort of texture or factual support. Did the district court resolve this Turrell Declaration issue? The district court did not, Your Honor. The district court did not. We did not move to strike, although as the case proceeded to trial, we did file a motion to eliminate on it. But we did not move to strike it and the district court did not rule. Similarly, the district court did not directly rule on the issue of whether the notes, which were allegedly made of each instance of harassment, should have been produced or used in the context of summary judgment. Finally, on the assault and battery claims, Bayless is the driver here. It's the same scenario. Can I ask you a question about that, particularly on the battery end of things? Because it looked to me like Bayless, you know, was certainly very close on all fours with some of the conduct in this question, the welcome back, hug and kiss, but maybe not so much with the rest of the conduct. And I did just have a question about how the Title VII standard kind of intersects with the Virginia battery standard, which is that the conduct has to be offensive and rude, insolent or angry. Is it possible that conduct can be offensive and rude under the Virginia standard without being severe or pervasive under Title VII? Do you know what I'm saying? I do. I do. Why I'm asking this is because I feel like we've said this a million times, that just because your supervisor, just because the conduct is offensive and rude, that doesn't mean you were sexually harassed under Title VII. That's a different standard. The workplace, you know, it has to affect your workplace conditions. And just because it's rude and obnoxious doesn't mean it does that. So it occurred to me there might be space between these two standards, like rude and obnoxious might be enough under Virginia law, even if it's not enough under Title VII. I'm not aware of any case or legal authority which has opined on that issue, but as the court provides it, I think that makes good sense. There are certainly a number of situations which might be offensive. For example, a single incident that wouldn't rise to the high level required under severe or pervasive. In conclusion, no reasonable juror could find that Mr. Hughes sexually harassed Ms. Sawash. The behavior here wasn't severe or pervasive. It wasn't because she's a woman. It simply doesn't rise to the high level that this court has repeatedly required in order to demonstrate severe or pervasive harassment, in order to ensure that the courts do not become tribunals of workplace misconduct as opposed to actionable discrimination. Thank you. All right, thank you. Mr. Grimes? Yes, my opponents made some statements that are just absolutely not true, and I want to correct them. First, with respect to the plaintiff's complaints to Erica Garrett, turn your attention to page 8 of the reply brief, and here's what the plaintiff told Erica Garrett, quote, this is in May of 2018. I talked to her about what David was doing to me and how he was treating me. My main concern was the issues I had going on with David, that he was touching me, hugging me, making me feel uncomfortable. He kissed me. The remarks and the comments that he would make towards me, I did tell her, and she told me that she would take care of it. That's in the joint appendix at pages 308 and 309. Counsel, can I ask you a question? So the district court credited that there were reports of Hughes' conduct and said that meant that the subjective component is met. Is it your contention that it also bears on the objective component, or is this mostly about the subjective component and then the imputation? It bears upon the objective component as well. For example, is reversible error not to look at the cumulative impact of repeated touching? The district court overlooked that altogether. But I don't know, what does that have to do with the reporting? I'm sorry, maybe I was unclear. I meant, do you think that the fact that she reported the conduct in the chain of authority, it clearly bears on the subjective component, as the district court held. I think you referred earlier to how it would affect the imputation, the last prong, whether you can hold the company liable. But do you also think that the fact of the reporting bears on the objective prong of severe and pervasive? It does in the sense that a jury could find that any reasonable woman would have felt the same way and done the same thing. And Erica Garrett wrote up in her report in May 15, 2018, she wrote, and again I'm quoting, page 13 of the reply brief, quote, ASM David Hughes is the major cause of the problems in the building due to his inappropriate behavior such as touching female associates. Close quote. That's joint appendix at 390 and 396. Moving with the speed of molasses, two months later, Marshalls wrote up David Hughes. And this is on page 14 of the reply brief, joint appendix at page 395. We have the write-up, quote, David has violated our code of conduct by exhibiting unprofessional and inappropriate behavior such as comments and unwelcome physical contact toward associates in the store. Close quote. There's no evidence he ever touched one male associate. No evidence whatsoever. So to pick up on Judge Quattlebaum and Judge Thacker, your comments under Vostok versus Clayton County, his sexual orientation is another red herring. It doesn't matter to your analysis whatsoever. The other misstatement was that Are you saying it doesn't matter, it doesn't, it's not a showstopper or it doesn't matter even to the proving because of sex through a solicitation claim? It doesn't matter to proving sex through solicitation even. At first the district court never passed on the question. Agreed. Right. So and finally the last misstatement. To say this is all about a kiss on the cheek on April 24, 2018, again I draw your attention to the reply brief at page 11, completely out of context. That occurred on April 24, 2018. So was said that, quote, he just pulled me in close to his body and that's when he kissed me on the cheek. Close quote. That's in the joint appendix at 362. The point is the harassment began in February. The touching began in February. It had gone on already then for two months. It ended in June. It went on for another two months after this kiss on the cheek. So that's not, if that's all we had, we wouldn't be here. Let me just say that. But it was an important part of your case before the district court. I mean, in fairness, it's not like your colleagues pulling it out of thin air. I said if that's all that we had. If that's all that we had, we wouldn't be here. We had months of unwanted touching while saying things like, don't do it for me again. Thank you very much for your time. All right. Thank you both for your zealous representation on behalf of your clients. We appreciate it, Mr. Baldwin and Mr. Grimes. And we'll now adjourn court until this afternoon.
judges: Stephanie D. Thacker, Pamela A. Harris, A. Marvin Quattlebaum Jr.